IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GREG JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-cv-119 |
| | § | |
| BLOCKBUSTER, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**
<u>**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Pending before the court are:

•   "Defendant's Motion for Summary Judgment and Brief in Support" (Dkt. 29);

•   "Plaintiff's Response and Brief in Opposition to Defendant's Motion for Summary Judgment" (Dkt. 30);

•   "Defendant's Reply in Support of its Motion for Summary Judgment" (Dkt. 31); and

•   "Plaintiff's Surreply in Opposition to Defendant's Motion for Summary Judgment" (Dkt. 33).

For the reasons set out below, Defendant's motion (Dkt. 29) is **GRANTED**.

**I. BACKGROUND**

This is an employment discrimination lawsuit. Plaintiff Gregory Jackson ("Jackson"), a black man, was employed as a manager in Blockbuster, Inc.'s ("Blockbuster") McKinney, Texas distribution center. Although the incident that lead to Jackson's termination is disputed, the parties agree that Blockbuster's reason for terminating Jackson's employment on October 23, 2007, was that Blockbuster found that Jackson had created a hostile work environment. Jackson

1

claims the reason cited by Blockbuster for his termination is a pretext for unlawful race discrimination.

Jackson was employed at Blockbuster's McKinney, Texas distribution center from July 2003 to October 23, 2007. The events that led to Jackson's termination unfolded in October 2007. On October 16, 2007, Blockbuster received a complaint about Jackson's treatment of a temporary contractor at the distribution center. According to witness statements, Jackson yelled at Eyerusalem Mokogen in anger when he discovered that she had left the sorter area after the sorter became jammed. (Def.'s Mot. Summ. J. Ex. 1 at 27–30.) Mokogen was reduced to tears, but Jackson apparently continued yelling and pounded his fist into his other hand. (*Id.*) Mokogen reported that she thought Jackson was going to hit her. (*Id.*) Following the incident, Mokogen and co-worker Lillie Wesely reported the incident to Gerald Blackshire, the staffing company's supervisor at the distribution center. Neal Berry, the Human Resources Manager at the time of the incident, investigated the complaint and determined that Jackson's actions violated Blockbuster's Zero Tolerance for Harassment Policy, which expressly prohibits "[u]nwelcome written, visual, verbal or physical conduct of an offensive nature" including conduct that "has the purpose or effect of creating an intimidate-ing, hostile or offensive working environment." (*Id.* at 11.) According to Mr. Berry, ""[a]fter reviewing multiple witness statements and considering all the circumstances, [he] made the decision to terminate Mr. Jackson's employment." (*Id.* at Ex. 4.)

Jackson vigorously disputes Blockbuster's rendition of the incident between he and Mokogen. According to Jackson, he never yelled at Mokogen and did not pound his fist in a threatening manner. (Pl.'s Resp. Ex. 6 at 38.) Instead, Jackson reports that he simply questioned

Mokogen about where she was when the sorter became jammed. (*Id.*) Jackson also claims that he was never contacted in Blockbuster's investigation of the incident and that the reports of the incident Blockbuster did consider are unreliable. Based on Blockbuster's failure to include him in the investigation, Jackson concludes that Blockbuster's real reason for firing him was unlawful race discrimination. On August 13, 2009, Jackson filed the present lawsuit seeking monetary damages and reinstatement.

In the instant motion, Blockbuster seeks summary judgment on two grounds. First, Blockbuster argues there is no evidence to support Jackson's claim of unlawful discrimination. According to Blockbuster, Jackson cannot establish a prima facie case of discrimination, because he cannot show that similarly situated white employees were treated differently. Even if Jackson can establish a prima facie case, Blockbuster argues there is no evidence to suggest the reason cited for Jackson's termination is pretext for unlawful discrimination. Second, Blockbuster argues summary judgment should be granted because the undisputed evidence proves Jackson did not mitigate his damages.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court

must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). To defeat a properly supported motion for summary judgment, the nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. ANALYSIS

#### A. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

As an initial matter, the court must address Jackson's objections to Blockbuster's summary judgment evidence. A district court may only consider admissible evidence in ruling on a motion for summary judgment. *Mersch v. City of Dallas*, 207 F.3d 732, 734–35 (5th Cir. 2000). Generally, "[t]he admissibility of summary judgment evidence is subject to the same

rules of admissibility applicable to a trial." *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995). However, Rule 56(e) also permits a district court to rely on affidavits that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). "Notably, the object of Rule 56 is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit." *Baxter v. Gov't Employees Ins. Co.*, No. 3:08-cv-0957-B, 2009 WL 2883512, at *1 (N.D. Tex. Sept. 4, 2009) (slip opinion). Instead, "[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Id.* Although a summary judgment affidavit need not recite any magic words, when a declaration is submitted in place of a sworn affidavit, the declaration must state that its contents are "true and correct." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).

In the present case, Jackson objects to Blockbuster's Exhibits 1, 4, 5, 6, and 8. The court will address the admissibility of each contested exhibit in turn.

First, Jackson argues Exhibit 1 is inadmissible, because Lennox's declaration does not establish the proper foundation for a business records affidavit and Lennox lacks personal knowledge of matters described in her declaration. As Blockbuster notes in its response, however, "personal knowledge of all the contents of a business record affidavit is not required." *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). Instead, a business record affidavit need only establish personal knowledge regarding how the records were made and kept. *See Travland v. Ector Co., Tex.*, 39 F.3d 319, 1994 WL 612342, at *4 (5th Cir. 1994) (unpublished) (a record custodian is "one who can explain the record keeping of the organization and vouch that the requirements of Rul 803(6) are met"). The Fifth Circuit has

"affirmed the introduction of evidence even when the affiant neither prepared nor had first-hand knowledge of the preparation of the document, so long as the witness's testimony was sufficient to support the document's reliability." *Id.* Lennox's declaration states that she is the Human Resources Manager at Blockbuster's distribution center in McKinney, Texas and that the records "were made at or near the time of the events noted therein by, or from information transmitted by, a person with knowledge of the events noted therein." (Lennox Dec. ¶¶ 2–3.) This is sufficient to establish the veracity of the personnel records in question. Jackson's objection is overruled.

Jackson also objects to statements made in Lennox's declaration because "the witness fails to allege personal knowledge of any disciplinary matters involving Jackson prior to the witness assuming her role as Human Resources Manager." (Pl.'s Resp. at 6.) This objection is also overruled. Lennox states in her declaration that she has personal knowledge of the matters set forth in her declaration. Although, Lennox did not assume her position as Human Resources Manager at the McKinney distribution center until February 2009, an affiant can establish personal knowledge through a review of business records. *See F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1255 n.12 (5th Cir. 1992) (finding personal knowledge based on review of records sufficient to support affidavit); *see also Budden*, 420 F.3d at 530 (personal knowledge may be reasonably inferred based on job requirements). Therefore, Lennox had sufficient personal knowledge to testify about the contents of Jackson's personnel file.

In addition, Jackson objects to Blockbuster's Exhibits 4–6 to the extent they seek to prove that Plaintiff actually engaged in the conduct that led to his termination. According to Jackson, the declarations of Neal Berry (Ex. 4), Terri Penman (Ex. 5), and Derrick Southward

(Ex. 6) are inadmissible because the witnesses lack personal knowledge of the alleged incident between him and Mokogen. These objections are overruled. The declarations in question are not presented to prove that the incident between Jackson and Mokogen occurred, but rather as evidence of the decision-making process that led to Jackson's termination. Each of the declarants were employed at Blockbuster's McKinney distribution center when Jackson was fired and were involved in the decision to terminate Jackson's employment.

Finally, Jackson argues the statements of Lillie Wesley, Eyerusalem Mokogen, and Gerald Blackshire are inadmissible.[1] These objections are overruled. The court did not consider the disputed witness statements as evidence of what occurred between Jackson and Mokogen on October 16, 2007, but rather as evidence of the information Blockbuster considered when it made the decision to fire Jackson.

### B. TITLE VII RACE DISCRIMINATION CLAIM

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of discrimination, the Fifth Circuit applies the *McDonnell Douglas* burden-shifting analysis. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). To withstand summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a

---

[1] The witness statements complained of in Plaintiff's Response are found in Defendant's Exhibit 1, not Defendant's Exhibit 8. The court assumes Plaintiff mistakenly labeled his objection to the witness statements and therefore considered the substance of his arguments in relation to Exhibit 1 rather than Exhibit 8.

prima facie case of discrimination. *Id.* at 317. "To establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

If the plaintiff is able to present a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Davis*, 383 F.3d at 317. The employer is not required to convince the court that it was actually motivated by its proffered reason. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Instead, the employer need only raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* To do so, the employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255. If a nondiscriminatory reason exists, "the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). "To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Id.* "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotations omitted).

## 1. Plaintiff's Prima Facie Case

The parties do not dispute that Jackson has established the first three elements of a prima facie case: he is a member of a protected class, qualified for the position at issue, and subject to an adverse employment action. The issue, therefore, is whether Jackson was treated less favorably than his peers who were not members of his protected class.

To establish the fourth element of his prima facie case, Jackson must show that he was similarly situated to employees who received more favorable treatment. This means Jackson must show that his own circumstances were "nearly identical" to those of a comparator. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). To be "nearly identical" a plaintiff's comparators must be similar with respect to time, geography, and qualifications:

> [e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances."

*Lee*, 574 F.3d at 259–60. Therefore, Jackson must do more than simply show that he was treated differently than other employees; he must show that he was treated differently under nearly identical circumstances. *See id.*

Jackson claims that other white managers engaged in behavior similar to his own, but were not fired. Specifically, Jackson alleges that white managers Charlie Smith, Jeff Davis, and Leroy Cole did or said things to make employees cry, but were not disciplined or terminated. (Pl.'s Resp. at 16.) According to Jackson, he personally witnessed one

9

such incident and "has first hand knowledge of another of the incidents because it was told to him by the victim who worked for Plaintiff." (*Id.* at 19.) However, the evidence before the court suggests that Jackson's alleged comparators were never reported for threatening employees. (*See* Def.'s Mot. Summ. J. at Ex. 8.) To the contrary, the declarations of Jennifer Huff and Karl Holstein, the alleged victims, indicate that they were never yelled at and never felt threatened. (*Id.*) Additionally, nothing before the court indicates that these incidents were even reported to a Blockbuster manager or anyone in Blockbuster's Human Resources Department. Therefore, Jackson's reported conduct is not "nearly identical" to his alleged comparators. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (nurses who engaged in similar conduct not similarly situated because "no one in a supervisory capacity was aware of the nurse's actions"). In fact, Blockbuster's summary judgment evidence indicates that there were only two similar reported instances of misconduct and both resulted in termination. (*Id.* at Ex. 4 ¶ 5, Ex. 5 ¶ 5, Ex. 6 ¶ 5.) Therefore, Jackson has failed to establish a prima facie case of employment discrimination based on race.

**2. Evidence of Pretext**

Assuming *arguendo* that Jackson could establish a prima facie case of race discrimination, Blockbuster articulated a legitimate nondiscriminatory reason for its employment decision: Jackson violated Blockbuster's zero tolerance harassment policy when he reportedly threatened an employee and made her cry. Because Blockbuster has articulated a legitimate nondiscriminatory reason, the presumptions of the *McDonnell Douglas* framework vanish and Jackson must produce evidence that Blockbuster's stated

reason is mere pretext for unlawful discrimination. *See Nasti*, 492 F.3d at 593. As discussed below, there is simply no evidence to suggest Blockbuster's nondiscriminatory reason for firing Jackson was pretext for unlawful discrimination.

To establish pretext Jackson argues Blockbuster's reasons for his termination must have been discriminatory, because its investigation of the incident does not reflect his side of the story. Citing no authority, Jackson argues that Blockbusters's "blatant omission to investigate clearly demonstrates a pretext for termination." (Pl.'s Resp. at 20.) However, the evidence before the court indicates that Blockbuster did conduct an investigation: Neal Berry and others in Human Resources considered the incident from the perspective of Mokogen, Wesley, and Blackshire. Although it may have been advisable for Blockbuster to investigate the veracity of the complaint by interviewing Jackson, the fact that Blockbuster did not interview Jackson does not establish pretext. *See Gallow v. Autozone, Inc.*, 952 F. Supp. 441, 448 n.6 (S.D. Tex. 1996) ("the failure to investigate (while possibly a poor business practice) does not establish that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination"). To establish a claim of discrimination under Title VII, a claimant must put forth some evidence to suggest the employment decision was motivated by racial animus. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

The only other evidence Jackson offers to support his claim that Blockbuster's cited reason for his termination is pretext is the same evidence he offered to support his

prima facie case. That is, Jackson argues that because white employees engaged in the same behavior and were not fired, Blockbuster's cited reason for firing him is pretext for unlawful discrimination. However, as discussed in the context of Jackson's prima facie case, there is no evidence that similarly situated employees who were not members of Jackson's suspect class were treated differently. Therefore, there is no genuine issue of material fact that Blockbuster's cited reason for Jackson's termination was a pretext for unlawful discrimination.

## IV. CONCLUSION

For the reasons set out above, Defendant's motion (Dkt. 29) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this the 4th day of June, 2010.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE